**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RONALD A. DOVE,** : | |
| **Petitioner** : | |
| : | **CIVIL ACTION NO. 3:12-0417** |
| **v.** : | |
| : | **(Judge Mannion)** |
| **YORK COUNTY, PA** : | |
| **PA STATE ATTORNEY GENERAL,** : | |
| : | |
| **Respondents** : | |
| : | |

## MEMORANDUM[1]

Ronald A. Dove, an inmate presently confined at the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Township), filed this *pro se* habeas corpus petition pursuant to 28 U.S.C. §2254. (Doc. No. 1, petition). He attacks a conviction imposed by the Court of Common Pleas for York County, Pennsylvania. Id. For the reasons that follow, the Court will deny the petition.

## I.   **Background**

The following background has been extracted from the Pennsylvania Superior Court's October 19, 2011 Memorandum Opinion affirming the trial court's dismissal of Petitioner's Post Conviction Relief Act ("PCRA") petition. (Doc. No. 12, Commonwealth v. Dove, No. 1978 MDA 2010, Superior Court Opinion at pp. 1-4).

The relevant facts and procedural history of this appeal are as

_____

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

follows. On January 6, 2009, Appellant assaulted his sister during an argument at their mother's house. Specifically, Appellant slapped his sister with an open hand and choked her. When a bystander attempted to intervene, Appellant pushed the bystander away. On March 25, 2009, the Commonwealth filed a criminal information charging Appellant with simple assault, harassment, and disorderly conduct.

On July 13, 2009, Appellant executed a written guilty plea colloquy. That same day, the court conducted Appellant's guilty plea hearing. Appellant entered a negotiated guilty plea to one count of simple assault. In exchange, the Commonwealth recommended a sentence of nine (9) to twenty-three (23) months' imprisonment at the county jail. The Commonwealth agreed to dismiss the remaining charges. Additionally, the Commonwealth noted that Appellant faced sentencing in an unrelated matter at No. 5810 of 2008. The Commonwealth requested that the court sentence Appellant on the simple assault conviction on August 5, 2009, at the previously scheduled sentencing hearing for No. 5810 of 2008. At the conclusion of the hearing, the court accepted Appellant's plea.

The court conducted Appellant's sentencing hearing on August 5, 2009. At No. 5810 of 2008, the court sentenced Appellant to an aggregate term of twenty-seven (27) to seventy-eight (78) months imprisonment at a state correctional facility. Thereafter, the court sentenced Appellant in conformance with the terms of the plea agreement for the simple assault conviction. Immediately after the imposition of sentence, plea counsel made the following suggestion:

[PLEA COUNSEL]: You might consider asking to do 9 to 24, make it a state sentence. My understanding, [Department of Corrections] has issues when there's a county sentence overlapping with a state sentence.

THE COURT: What issues would they have? They are concurrent.

ATTORNEY BARROUK:[1] They are concurrent. If it's not a state sentence, what the Department of Corrections does is run the state sentence and parole to the county sentence. I have seen that happen in cases in Dauphin County. I have seen it.

THE COURT: That sounds like a bureaucratic never, never land type of issue. The agreement was, plea agreement, 9 to 23 months. If [Appellant] is saying it's okay with him to be 9 to 24, we'll consider it. Is that –

[APPELLANT]: I think they are trying to say one to two, make it a state sentence.

---

[1]Attorney Barrouck represented Appellant at No. 5810 of 2008.

2

THE COURT: It's going to be state time anyways because of the other case. He's asking this because apparently sometimes...the Department of Corrections and the Commonwealth, like instead of recognizing that this sentence is to run concurrently, they have you serve the state sentence and then they parole you to serve your county sentence. Even though it's to run concurrently to avoid that, [plea counsel] is suggesting we have a 9 to 24 months rather than 9 to 23 months. Do you want to do that?

[APPELLANT]: Yeah.

(N.T. Sentencing Hearing, 8/5/09, at 10-11). Consequently, the court accepted Appellant's request and resentenced him to nine (9) to twenty-four (24) months' imprisonment for the simple assault conviction. Appellant did not file post-sentence motions or a notice of appeal.

On June 22, 2010, Appellant timely filed a *pro se* PCRA petition, alleging ineffective assistance of counsel in conjunction with the entry of the guilty plea. On August 30, 2010, Appellant filed an amended PCRA petition, providing additional argument on his ineffectiveness claim. On November 15, 2010, the court notified Appellant of its intent to dismiss the petition without a hearing, pursuant to Pa.R.Crim.P. 907.

Appellant did not file objections to the Rule 907 notice. Instead, Appellant prematurely filed a *pro se* notice of appeal on December 1, 2010. On December 6, 2010, the court ordered Appellant to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant subsequently complied with the court's Rule 1925(b) order. On December 9, 2010, the court formally entered an order denying PCRA relief.[2]

Appellant filed an application to proceed *pro se* with this Court on December 10, 2010. On February 9, 2011, this Court ordered the PCRA court to conduct a hearing pursuant to Commonwealth v. Grazier, 552 Pa. 9, 713 A.2d 81 (1998), to assess Appellant's waiver of counsel. The PCRA court conducted the Grazier hearing on February 23, 2011. At the conclusion of the hearing, the court found Appellant had knowingly waived his right to counsel.

Appellant now raises six issues for our review:

WAS THE [PCRA] COURT IN ERROR WHEN IT DISMISSED APPELLANT'S CLAIM OF

[2]"A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905(a)(5).

3

> INEFFECTIVE COUNSEL, AND APPELLANT'S PLEA WAS INVOLUNTARY AND UNKNOWLEDGEABLE, AND UNINTELLIGENT, WITHOUT AN EVIDENTIARY HEARING?
>
> WAS THE [PCRA] COURT IN ERROR WHEN IT JUDGED DEFENSE COUNSEL'S STRATEGY WAS REASONABLE, ON THE WAIVER OF JUSTIFICATION?
>
> WAS THE [PCRA] COURT IN ERROR WHEN IT SUGGESTED THE BREACH OF CONTRACT ("COUNTY" TO "STATE" SENTENCE) WAS TO [APPELLANT'S] BENEFIT?
>
> WAS THE [PCRA] COURT IN ERROR WHEN IT DISMISSED APPELLANT'S CLAIM THAT THE GUILTY PLEA COLLOQUY WAS FATALLY DEFECTIVE?
>
> WAS THE [PCRA] COURT IN ERROR WHEN IT DISMISSED APPELLANT'S CLAIM THAT THERE WAS A MISUNDERSTANDING ABOUT THE NEGOTIATED PLEA AGREEMENT, WITHOUT AN EVIDENTIARY HEARING?
>
> WAS THE [PCRA] COURT IN ERROR WHEN IT FAILED TO ACKNOWLEDGE *DE MINIMIS* INFRACTION...WAS AN ALTERNATIVE FOR THE COURT TO CONSIDER, IN REGARDS TO A FAMILY SQUABBLE?

(Appellant's Brief at iv). Id. On October 19, 2011, the Pennsylvania Superior Court affirmed the order dismissing Petitioner's PCRA petition. Id.

On January 3, 2012, the Pennsylvania Superior Court denied Petitioner's motion for reconsideration. (Doc. No. 12, at 158, Order of Court).

On March 6, 2012, Dove filed the instant petition for writ of habeas corpus in which he raises the following challenges to his conviction and sentence:

1.   Was Petitioner denied effective assistance of counsel when trial counsel advised Petitioner to plead guilty to simple assault when Petitioner was innocent by justification?

2.   Was Petitioner's guilty plea invalid?

3.   Was Petitioner denied effective assistance of counsel when his trial counsel agreed to change his sentence

4

tail from 23 months to 24 months?

4.   Was Petitioner denied due process when his trial counsel advised him to plead guilty, the court accepted his guilty plea and counsel agreed to change the tail of his sentence?

(Doc. No. 1, petition).

## II.   **Standards of Review**

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

### A.   **Exhaustion**

It is well-established that a federal court may not entertain the merits of a petition for writ of habeas corpus unless available state court remedies have been exhausted. 28 U.S.C. §2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).[3] Because the exhaustion doctrine is designed to give the

---

[3]Exhaustion is excused if "there is an absence of available State corrective process[,] or ... circumstances exist that render such process ineffective to protect the rights of the applicant." Lines v. Larkins, 208 F.3d 153, 163 (3d Cir. 2000), quoting 28 U.S.C. §2254(b)(1)(B)(I) and (ii). Hence, "exhaustion is not required if there is inordinate delay in state procedures, id.

state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must invoke one complete round of the state's established appellate review process. Id. at 845.

The habeas corpus petitioner shoulders the burden of establishing exhaustion of state court remedies. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing Lambert v. Blackwell, 134 F.3d 506, 513 (3d. Cir. 1997). The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state courts. Picard v. Connor, 404 U.S. 270, 275 (1971). "All claims that a petitioner in state custody attempts to present to a federal court for habeas review must have been fairly presented to each level of the state courts." Lines, 208 F.3d at 159. See also Baldwin v. Reese, 541 U.S. 27 (2004)(holding that "to provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."). The Respondent concedes that Petitioner has exhausted his state court remedies. The merits of the claims will therefore be addressed.

## B. Merits

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

---

at 250, or if state officials have obstructed the petitioner's attempts to obtain state remedies." Id. at 163, citing Mayberry v. Petsock, 821 F.2d 179 (3d Cir. 1987).

(1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. §2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in §2254(e)(1) applies to factual issues, whereas the unreasonable application standard of §2254(d)(2) applies to factual decisions) Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the

basis of the evidence in the record. 28 U.S.C. §2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." Breighner v. Chesney, 301 F. Supp 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. §2254(d)(2) and (f)[4]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Porter, 276 F. Supp 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp 2d at 296; see also Williams, 529 U.S. at 408-09.

## 1.    Validity of Guilty Plea

Petitioner challenges the validity of his guilty plea, stating that he "entered a plea of guilty in ignorance." (Doc. No. 1, petition at 11).

Due process guarantees require that a defendant's plea be voluntary and intelligent. Bousley v. United States, 523 U.S. 614, 618 (1998); Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238-

---

[4]"If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination."   28 U.S.C. §2254(f).

242 (1969).  As such, no criminal defendant should plead to a crime unless, and until, he has had explained to him and understands all of his constitutional rights and protections, including the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the right to confront one's accusers. In the Boykin case, the United States Supreme Court emphasized the importance of a judge's duty in ensuring that a criminal defendant have a full understanding of what the plea connotes and its consequences by "canvassing the matter" on the record. Boykin, 395 U.S. at 243-44. The failure to specifically articulate these rights, however, is not dispositive if the circumstances otherwise establish that the plea was constitutionally acceptable. United States v. Stewart, 977 F.2d 81, 85 (3d Cir. 1992), cert. denied, 507 U.S. 979 (1993)(plea colloquy adequate despite trial court's failure to enumerate Boykin rights given that those rights were reviewed in prior plea colloquy that occurred only six weeks earlier.)

A plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). Further, the plea cannot be induced by threats or misrepresentations. The voluntariness of a plea presents a question of law. Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983). However, state court determinations of underlying questions of fact constitute matters which should receive deference under §2254:

> [A]lthough "the governing standard as to whether a plea of guilty is voluntary for purposes of the federal Constitution is a question of federal law," questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings under [former] 28 U.S.C. §2254(d). Parke v. Raley, 506 U.S. 20, 35 (1992).

Thus, the issue whether a defendant understood the consequences of

pleading falls within the scope of factual findings entitled to deference. See Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir. 1986).

A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." Brady, 397 U.S. at 748. The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. Id. at 756.

The trial court, at the guilty plea hearing, colloquied Dove regarding his understanding of the proceedings as follows;

The Court: All right. Is that a correct recitation of the agreement?

Attorney Witkonis: It is, Your Honor, yes.

The Court: Sir, will you state your name for the record, please?

The Defendant: Ronald Dove.

The Court: Are you the Defendant in this case?

The Defendant: Yes.

The Court: Do you read, write, speak and understand the English language?

The Defendant: Yes.

The Court: Within the last 24 hours, have you consumed any alcoholic beverages or other substances that might impair your ability to understand what we're doing here today?

The Defendant: No.

The Court: Do you have any condition that might affect your ability to understand today's proceedings?

The Defendant: No.

The Court: We've been handed up an 11-page document entitled guilty plea colloquy. It's been initialed at the bottom of pages 2

10

through 10. It looks like RD, and on pages 9 and 10 a Defendant's signature appears. We show you the signature and ask you is it yours?

The Defendant: Yes, sir.

The Court: Did you sign this document?

The Defendant: Yes, sir.

The Court: Did you initial this document?

The Defendant Yes, sir.

The Court: Have you read this document in its entirety?

The Defendant: Yes, sir.

The Court: After you did so, did you have the opportunity to speak with Mr. Witkonis about it?

The Defendant: Yes, I did.

The Court: Did he answer any questions you might have had on it?
The Defendant: Yes.

The Court: Are you satisfied that you understand the importance of reading over this document?

The Defendant: Yes, sir.

The Court: Did Assistant District Attorney Ramseur accurately describe the terms of the plea agreement?

The Defendant: Not really, but I read it.

The Court: No. Let me make sure you understand.

The Defendant: Yes. I understand.

The Court: Well, I'm not sure that you do and I'm not sure the record would reflect that. What I'm asking you is whether or not Assistant District Attorney Ramseur accurately described to me the terms of the negotiated plea agreement.

The Defendant: Okay. I misunderstood. Yes, sir. Yes, he did.

11

The Court: Okay. And are you -- I'll ask you again. Are you satisfied that you understand the meaning and importance of the guilty plea colloquy?

The Defendant: Yes, Sir.

The Court: Is anybody trying to in any way force you or pressure you to plead guilty to simple assault?

The Defendant: No, sir.

The Court: Are you doing so of your own free will?

The Defendant: Yes, Sir.

The Court: We turn now to Count 1 of the information. It accuses you of committing the second degree misdemeanor simple assault. The Commonwealth says that you, the Defendant, attempted to cause or intentionally, knowingly or recklessly caused bodily injury to Barbara Krout by striking her multiple times in the face and choking her. Is that accurate?

The Defendant: Yes.

The Court: Did you do that?

Defendant: Yes sir. I apologize sir.

The Court: What did you strike her in the face with?

The Defendant: It was a family squabble, just slapping. She was slapping me and just a family -- brother and sister squabble, that's all.

The Court: Did you slap her?

The Defendant: Yeah.

The Court: Did you choke her?

The Defendant: Not that -- I don't recollect -- I don't recollect that I did.

The Court: When you say you don't' recollect, does that mean you might have?

12

The Defendant: I could have, yes, your honor. I apologize.

The Court: Did you feel it was necessary to strike her to defend yourself?

The Defendant: Yes sir.

The Court: That's not what the legal justification -- That sounds like a legal justification to me. Is he saying that he acted in self defense?

Attorney Witkonis: Your Honor, it's an affirmative defense which he can waive is justification. So at this time he'd be waiving any affirmative defenses he would have.

The Court: Is that correct, sir?

The Defendant: Yes.

The Court: Here's what he means by that. What he means by that is, you know, if it looks like you're going to assault me, and as a result of I believing that you are going to assault me, I physically restrain you in some way or even, knock you down and I'm charged with simple or aggravated assault, my defense would be, hey, I was justified in doing so, he was coming after me. Now, what Mr. Witkonis says is that any defense of that nature you are waiving.

The Defendant: I agree with him.

The Court: Okay. And I mean whether that is reasonable or not frankly depends upon the circumstances. If you give me a dirty look and I don't like it and I give you a dirty look back and we decide that we're going to settle this outside; the fact that you take the first swing doesn't mean I'm defending myself. Okay? So that's a mutual fray and, typically speaking, a defense or justification of self defense doesn't work. Self defense is only where you have no other reasonable choice other than to fight back. Do you believe you had any other choice but to fight back when you were in this argument with your sister?

The Defendant: Did I have any reason to fight back?

The Court: No, did -- was that your only -- was that our only reasonable course of action?

The Defendant: No, sir. I guess I could have walked outside.

13

The Court: You could have, couldn't you?

The Defendant: It was my place, I live there, but, yeah, I could have.

The Court: All right. How do you plead to simple assault?

The Defendant: Guilty.

(Doc. 12, N.T., Guilty Plea Hearing, July 13, 2009, pp. 3-5).

In addressing the colloquy on appeal, the Superior Court found that:

Instantly, Appellant completed a written colloquy prior to the entry of his guilty plea. In it, Appellant indicated the parties had agreed to a sentence of nine to twenty-three months for the simple assault charge, to run concurrent with the sentence imposed for No. 5810 of 2008. (See Written Colloquy, dated 7/13/09, at 7). Appellant acknowledged that no one had coerced his plea, he acted of his own free will, and he had an adequate opportunity to talk to plea counsel before executing the colloquy and deciding to enter the plea. Significantly, Appellant answered in the affirmative, "Are you satisfied with your attorney's representation of this case?" (Id. at 9). Because Appellant asserted his satisfaction with plea counsel's representation, he cannot now claim that counsel was ineffective. See Lewis, supra.

Thus, it is apparent from the transcript, and the Superior Court's decision, that the oral colloquy addressed, among other topics, the Petitioner's understanding of the written guilty plea colloquy, his understanding of the terms of the plea agreement, the absence of coercion, the absence of any intoxicating substances in his system, his understanding of the charges against him, his version of the events that led to the criminal charges, and his satisfaction with his plea counsel. As such, this Court finds that the transcript of Petitioner's guilty plea supports the Superior Court's finding that Petitioner's plea was knowing and voluntary, and there is no basis to rebut the statutory presumption of correctness which attaches to the factual component of this finding.

**2.    Ineffective Assistance of Counsel**

14

In Strickland v. Washington, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Id. at 687; accord Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir.1994).

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; accord Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; accord Jermyn, 266 F.3d at 282; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996). If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, Strickland, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." United States v. Wiener, 127 F. Supp.2d 645, 648 (M.D. Pa. 2001). A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel. See Burger v. Kemp, 483 U.S. 776, 794 (1987). It follows that counsel cannot be deemed ineffective for pursuing a meritless claim. Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and shows prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir.1992) "Without proof of both deficient performance and prejudice to the defense ...

it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002)(internal quotations and citation omitted). In assessing whether the result of the proceeding might have been different, a reviewing court must consider the "totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695; Jermyn, 266 F.3d at 283. However, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d. Cir. 2006). "The object of an ineffective assistance claim is not to grade counsel's performance. If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

When the Pennsylvania state courts reviewed the claims raised by Dove, Strickland's familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the Strickland test. See, e.g., Commonwealth v. Johnson, 565 Pa. 51, 771 A.2d 751, 757 (Pa. 2001). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n. 9 (3d Cir. 2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, under §2254(d)(1), the relevant inquiry in addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania state court decision involved an unreasonable application of Strickland. Jacobs, 395 F.3d at 107

n. 9; Werts, 228 F.3d at 204.

Petitioner in this case advances no argument that the Superior Court decision is contrary to extant United States Supreme Court precedent. In this regard, Petitioner does not maintain that the ineffective assistance test applied by the state court is inconsistent with the test established in Strickland and developed in its progeny. Thus, each asserted instance of ineffective assistance will be considered against this standard.

Petitioner raises the following three claims of ineffective assistance of counsel:

> 1.    Was Petitioner denied effective assistance of counsel when trial counsel advised Petitioner to plead guilty to simple assault when Petitioner was innocent by justification?
>
> 2.    Was Petitioner denied effective assistance of counsel when his trial counsel agreed to change his sentence tail from 23 months to 24 months?
>
> 3.    Was Petitioner denied due process when his trial counsel advised him to plead guilty, the court accepted his guilty plea and counsel agreed to change the tail of his sentence?

(Doc. No. 1, petition).

In addressing these issues on appeal from the PCRA court's dismissal of Petitioner' PCRA petition, the Pennsylvania Superior Court found the following:

> At the plea hearing, the Commonwealth commenced the proceedings by restating the negotiated sentence of nine to twenty-three months' imprisonment at the county jail. Thereafter, the court proceeded with the oral colloquy. Appellant denied having any condition that might affect his ability to understand the proceedings. Appellant confirmed he had executed the written colloquy after conferring with plea counsel and reading the entire document. Appellant admitted the Commonwealth had accurately described the terms of the plea agreement. The parties also discussed the factual basis as follow:

THE COURT: We turn now to Count 1 of the information. It accuses you of committing the second degree misdemeanor simple assault. The Commonwealth says that you, the Defendant, attempted to cause or intentionally, knowingly or recklessly caused bodily injury to [the victim] by striking her multiple times in the face and choking her. Is that accurate?

[APPELLANT]: Yes.

THE COURT: Did you do that?

[APPELLANT]: Yes sir. I apologize sir.

(See N.T. Guilty Plea Hearing, 7/13/09, at 4).

Contrary to Appellant's assertions, he did have the opportunity to provide the court with his own version of the facts. Appellant told the court, "It was a family squabble, just slapping. She was slapping me and just a family–brother and sister squabble, that's all." (Id. at 4-5). The court asked Appellant whether he felt it was necessary to strike the victim, and Appellant responded affirmatively. At that point, the parties' discussion of the factual basis for the plea morphed into an exploration of the concepts of self-defense and justification:

[PLEA COUNSEL]: Your Honor, [justification is] an affirmative defense which he can waive... . So at this time he'd be waiving any affirmative defenses he would have.

THE COURT: Is that correct, sir?

[APPELLANT]: Yes.

THE COURT: Here's what [plea counsel] means by that. What he means by that is, you know, if it looks like you're going to assault me, and as a result of [me] believing that you are going to assault me, I physically restrain you in some way or even, knock you down and I'm charged with simple or aggravated assault, my defense would be, hey, I was justified in doing so, he was coming after me. Now, what [plea counsel] says is that any defense of that nature you are waiving.

[APPELLANT]: I agree with him.

18

                              *     *     *

THE COURT:  Self defense is only where you have no other reasonable choice other than to fight back. Do you believe you had any other choice but to fight back when you were in this argument with your sister?

[APPELLANT: Did I have any reason to fight back?

THE COURT: No, did -- was that your only -- was that our only reasonable course of action?

[APPELLANT]: No, sir. I guess I could have walked outside.

THE COURT: You could have, couldn't you?

[APPELLANT]: It was my place, I live there, but, yeah, I could have.

(Id. at 5-6). Appellant is bound by his statements regarding the inapplicability of these defenses. See Pollard, supra. Under the totality of these circumstances, Appellant entered a knowing, voluntary and intelligent guilty plea to the offense of simple assault. See Muhammad, supra.

Regarding the slight modification to Appellant's maximum sentence, the record belies Appellant's claim that plea counsel's ineffectiveness deprived him of the benefit of the bargain of the negotiated sentence. Rather, Appellant participated in the discussion about possible complications arising from a county sentence. After receiving an explanation from the court and defense counsel present at the hearing, Appellant agreed to the one-month increase in his maximum sentence. (See N.T. Sentencing at Hearing at 11). On this record, we see no basis for an ineffectiveness claim where Appellant expressly assented to the modification of the negotiated sentence. Based upon the foregoing, Appellant's allegations of counsel's ineffectiveness lack arguable merit. See Pierce, supra; Poplawski, supra. Accordingly, we affirm the order dismissing Appellant's PCRA petition.

(Doc. No. 12, Commonwealth v. Dove, No. 1978 MDA 2010, Superior Court Opinion at pp. 11-15).

Here, the record demonstrates that Petitioner fails to meet either of Strickland's prongs. First, Petitioner admitted to the court that there was an alternative to assaulting his sister, specifically, he could have walked outside,

instead of assaulting her. However, Petitioner viewed his only reasonable course of action as one of assault. As such, any possible justification defense would have not succeeded at trial. Thus, Petitioner's claim that counsel was ineffective for advising Petitioner to plead guilty to simple assault when Petitioner was innocent by justification, is completely without merit.

Moreover, Dove fails to meet the second prong of Strickland, in that he fails to prove how he was prejudiced by the alleged ineffectiveness of plea counsel. Specifically, had Petitioner pled guilty to the original sentencing structure, he would have been sentenced to 9 to 23 months. Although concurrent with Petitioner's other case, the Department of Corrections would have had Petitioner complete his state sentence and then parole him to York County Prison to complete the instant assault sentence. Thus, by requesting the trial court to change Petitioner's sentence tail from 23 to 24 months, the Petitioner is likely serving less time than if the sentence had not bee changed. As was indicated by the trial court judge, there was going to be state time served anyway, as a result of Petitioner's other case. Therefore, changing the sentence tail made no difference as to where Petitioner's time would be served. It only made a difference as to how much time Petitioner would actually serve, which likely turned out to Petitioner's benefit. Consequently, plea counsel's action cannot be deemed ineffective.

To the extent that Petitioner now argues that "the reason [he] wanted a county sentence was [he] is positive, the traffic stop on [his] DUI charge was illegal" and "he finally got this Fourth Amendment issue in the Superior Court of PA", (Doc. No. 1, petition at 6), such recent information has no bearing on plea counsel's performance at a guilty plea hearing which occurred in 2009. At the time of Petitioner's guilty plea in the instant action, Petitioner was sentenced to twenty-seven to seventy-eight months to be served in a state

correctional institution. Since the maximum sentence in Petitioner's DUI case was greater than 24 months, Petitioner was going to serve that sentence in a state prison, even while pursuing his appeal rights. Once again, to the extent that Petitioner's assault conviction was subsumed with the DUI sentence, it resulted in Petitioner receiving a shorter concurrent sentence. As such, the Court finds no merit to Petitioner's claims that counsel was ineffective.

### III.   Certificate of Appealability

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, no COA will issue. A separate Order will be issued.

## IV.  Conclusion

In light of the foregoing, the petition for writ of habeas corpus will be **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: February 21, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-0417-01.wpd

22